**MINCEY FITZPATRICK ROSS, LLC**                        Counsel for Plaintiffs
BY:     Kevin V. Mincey, Esquire
        Thomas O. Fitzpatrick, Esquire
        Riley H. Ross III, Esquire
IDENTIFICATION NOs.: 90201/93204/204676
1650 Market Street, Suite 3600
Philadelphia, PA 19103
215-587-0006

## IN THE UNITED STATES OF AMERICA DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAJAH JENNINGS <br> Chester, PA <br><br> and <br><br> MIKE EWALL <br> Philadelphia, PA <br><br><br> Plaintiffs <br> v. <br><br> CITY OF CHESTER <br> 1150 Engle Street <br> Chester, PA 19013 <br><br> THADDEUS KIRKLAND, MAYOR <br> City of Chester <br> 1150 Engle Street <br> Chester, PA 19013 <br><br> PORTIA WEST, COUNCIL PERSON <br> City of Chester <br> 1150 Engle Street <br> Chester, PA 19013 <br><br> ELIZABETH WILLIAMS, COUNCIL PERSON <br> City of Chester <br> 1150 Engle Street <br> Chester, PA 19013 <br><br> Defendants. | IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA |

## INTRODUCTION

In the incident described below, the Chief Executive of the City of Chester,

located in Delaware County, Pennsylvania, along with two members of Chester's

1

governing body who observed and failed to intervene, physically assaulted a man to prevent him from recording official activity causing injury to a woman who was trying to deescalate the confrontation in the process. Defendant Kirkland violated the rights guaranteed to the Plaintiffs and others under the First Amendment of the United States Constitution by physically confronting, threatening, and retaliating against those who protest the decisions made while he has served as the Mayor of the City of Chester.

The Plaintiffs allege as follows:

## JURISDICTION

1. This action is brought pursuant to 28 U.S.C. §1331 and §1343. This action arises under the provisions of the Civil Rights Act of 1866, as amended 42 U.S.C. §1983.  Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to adjudicate claims arising under state law.

## VENUE

2. Venue is appropriately laid in this Court pursuant to 28 U.S.C. §1391(b) in that the actions complained of took place in the City of Chester, which is within the bounds of the Eastern District, and Defendants carry on business within the Eastern District.

## PARTIES

3. Plaintiff, Tajah Jennings, is an adult individual and citizen of the United States who resides in the City of Chester, PA.

4. Plaintiff, Mike Ewall, is an adult individual and citizen of the United States who resides in Philadelphia, PA.

5. A defendant is the City of Chester (Chester), a political subdivision, and governmental entity in the Commonwealth of Pennsylvania, organized and

2

existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 1150 Engle Street, Chester, PA 19013.

6.    A defendant is Thaddeus Kirkland, Mayor of the City of Chester, having a main place of business at 1150 Engle Street, Chester, PA 19013. At all times relevant hereto, Mayor Kirkland participated in and was the cause of Plaintiffs' injuries.

7.    A defendant is Portia West, Council Person in the City of Chester, having a main place of business at 1150 Engle Street, Chester, PA 19013. At all times relevant hereto, Councilwoman West participated in and was the cause of Plaintiffs' injuries.

8.    A defendant is Elizabeth Williams, Council Person in the City of Chester, having a main place of business at 1150 Engle Street, Chester, PA 19013. At all times relevant hereto, Councilwoman Williams participated in and was the cause of Plaintiffs' injuries.

9.    The complained of acts and failures to act by the Defendants herein were objectively unreasonable and were intended to cause harm.

10.    At all times relevant to this action, the within described corporate and individual Defendants were acting under color of law, and the individual Defendants were acting in the course and scope of their duties with their respective corporate or departmental employers, to wit, the City of Chester, and in furtherance of those corporate employers' business objectives and purposes.

11.    At all times relevant to this action, the within described corporate employers, to wit, the City of Chester, were liable for the acts and failures to act of the

3

individual Defendants under theories of agency, master-servant, respondeat superior and/or control or right of control.

12. Defendants engage in a pattern and practice of conduct that violates the First and Fourteenth amendments to the United States Constitution.

13. These patterns and practices include engaging in retaliation for protected expression and impeding individuals right to record official activities conducted in public in violation of the First Amendment.

14. These patterns and practice are further reflected in, and caused by, the Defendants' failure to establish consistent policies and procedures, effective training, and meaningful supervision to appropriately guide and monitor the actions of city officials; failure to establish reliable systems to detect and appropriately discipline and hold accountable city officials for misconduct.

## **OPERATIVE FACTS**

15. On April 23, 2022, Chester residents and other activists met at Chester City Hall to participate in the second annual "Environmental Justice Day" march.

16. The protest, held the day after "Earth Day," was organized to protest the Covanta Delaware Valley trash incinerator, which is Chester City's largest industrial air polluter and largest environmental violator.

17. Covanta owns the trash incinerator in Chester and, according to data from the U.S. Environmental Protection Agency, is one of the largest polluters of its kind in the country.[1]

---

[1] See https://www.epa.gov/air-emissions-inventories/2017-national-emissions-inventory-nei-data

4

18. The protestors, including citizens of Chester, Plaintiff Ewall and others, planned to march down Pennsylvania Route 291 from Chester City Hall to the incinerator.

19. Protestors utilized the private parking spaces located at the Delaware County Historical Society (DCHS) with the express permission from the Executive Director of DCHS.

20. When protestors arrived at City Hall on the morning of April 23rd, they were prevented from using the free parking lot located at City Hall by wooden horses, yellow police tape, and two private security officers guarding the entrance to the lot.

21. Parking authority vehicles and employees were parked at City Hall prior to protestors arriving on the morning of April 23rd.

22. Upon information and belief, Defendant Williams gave the security officers instructions to not allow protestors to park in the parking lot at City Hall.

23. Upon information and belief, Defendants Kirkland, West, and Williams, gave instructions to parking authority officers to ticket the vehicles of individuals who participated in the protest prior due solely to their participation in the protest.

24. The size and sound of the march attracted the attention of people along the route to ask questions about the cause. Those people were then given information to inform on the issue.

25. Plaintiff Jennings lives along the route of the march.

26. Plaintiff Jennings came outside to get information about the march and the issues surrounding it.

5

27. Plaintiff Jennings was speaking with people involved in the march when she, Plaintiff Ewall, and others were confronted by Defendants Kirkland, West, and Williams and others who had been driving behind the group of protestors in a black pick-up truck.

28. While seated in the drivers' seat of the truck, Defendant Kirkland used a loudspeaker to threaten Plaintiff Ewall and another protestor.

29. After threatening Plaintiff Ewall, Defendant Kirkland exited the truck and confronted Plaintiff Ewall.

30. Plaintiff Jennings stepped in between Plaintiff Ewall and Defendant Kirkland to deescalate the situation.

31. Defendant Kirkland berated Plaintiff Ewall even as Plaintiff Jennings stood in between the two men.

32. Plaintiff Ewall was holding his cell phone in his hands as if he was recording Defendant Kirkland berating him.

33. Defendant Kirkland slapped Plaintiff Ewall's hand to make him drop the phone and prevent him from recording the incident.

34. After having his hand hit by Defendant Kirkland, Plaintiff Ewall's phone flew from his hand and struck Plaintiff Jennings in the face, causing injury.

35. Immediately after the incident, Defendant Kirkland can be seen on video trying to approach Plaintiff Jennings as she holds her mouth trying to get away from him.

36. Plaintiff Jennings returned to her home to get away from Defendant Kirkland. While in her home she dialed 911.

6

37. While Plaintiff Jennings was on the phone with dispatch began to feel overwhelmed and opened her door for air.

38. When she opened her door, she found Defendant Kirkland standing at her front door.

39. Plaintiff Jennings closed the door and waited for the police to arrive.

40. Defendant Kirkland did not remain at the location to speak with the police.

41. On the following day, Plaintiff Jennings left her home to walk her dog and Defendant Kirkland slowly followed her in his vehicle as she walked down the street.

42. Chester officials have taken retaliatory action, including issuing citations, against individuals exercising their First Amendment rights.

43. On the date above, Chester issued parking citations to the owners of lawfully parked vehicles that were known to officials to belong to those participating in the protest without legal justification.

44. Chester officials routinely confront protestors and individuals exercising their right to free speech often clash with those making statements that are averse to the interests of Chester officials.

45. Chester does not perform any comprehensive review of incidents sufficient to detect patterns of misconduct by a particular official.

46. Chester officials do not use de-escalation techniques to avoid or minimize conflict. Instead, they respond with impatience, frustration, and sometimes directly escalate incidents themselves. Chester's weak oversight of officials' conduct facilitates this behavior.

7

47. Chester officials engage in a pattern or practice of violating First Amendment rights, including the right to record public officials' activities and the right to peaceably assemble.

## DEFENDANTS' VIOLATIONS OF PLAINTIFFS' CONSTITUTIONAL RIGHTS AND PLAINTIFFS' HARMS AND LOSSES

48. Plaintiffs were subjected to First Amendment violations by Defendants Kirkland, West, and Williams.

49. Plaintiffs were subjected to physical assault by Defendant Kirkland.

50. Defendants violated Plaintiffs' clearly established and well-settled federal constitutional rights, including, but not limited to, their right to peaceably assemble.

51. Furthermore, the Constitutional violations suffered by Plaintiffs were the result Chester and the other named defendants' policies, procedures, customs, and practices of allowing political officials to aggressively confront lawful protestors thereby violating the civil rights of those with whom they come into contact.

52. Defendants have maintained, with deliberate indifference to the impact on citizens, an inadequate system of review of instances of misconduct, abuse of powers or violation of citizens' rights by political officials, a system which has failed to identify instances of abuse of powers or violations of citizens' rights by political officials, discipline, or more closely supervise, and has led to the retention individuals who abuse their powers or violate citizens' rights, including the Defendants named herein.

53. Defendants were deliberately indifferent to the need for more or different training, rules, regulations, investigations, and discipline relating to political officials' interaction with lawful protestors as set forth above.

54. The foregoing acts, omissions, systemic deficiencies, practices, customs, and deliberate indifference constitutes the policies, practices, and customs of Defendants and have caused the political officials in the City of Chester, including the Defendants named herein, to violate the constitutional rights of citizens, including Plaintiffs.

55. The rights violations and injuries suffered by Plaintiffs were a foreseeable result of the policies, practices, customs, and deliberate indifference of Defendants.

### COUNT I
### RETALIATION AGAINST FREE EXPRESSION
### PLAINTIFFS V. ALL DEFENDANTS

56. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

57. The Plaintiffs claim damages for the violation of their rights to freedom of speech, association, and assembly under the First Amendment of the United States Constitution, as well as the Pennsylvania Constitution.

58. The named Defendants, unlawfully and without legal justification, while acting under the color of state law, deprived all the above-named Plaintiffs of their rights to free speech, association, and assembly as protected by the First and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. Section 1983.

9

59. The named Defendants, by their actions noted above against the Plaintiffs for exercising their rights under the First Amendment, violated their individual rights to free expression, to association, and assembly.

60. The actions and conduct of the named Defendants, violated the rights of all the named Plaintiffs to continue to engage in their First Amendment rights and acted with deliberate indifference toward the Plaintiffs' individual First Amendment rights. The actions and conduct by the named Defendants had a chilling effect on their individual rights to free speech, association and assembly under the First Amendment.

61. As a direct and proximate cause of the named defendants' actions and conduct, the Plaintiffs suffered a deprivation of their First Amendment rights to continue to engage in free speech, association, and assembly on the aforementioned date and created a chilling effect on the exercise of their First Amendment rights in the future.

62. As a direct and proximate cause of the named Defendants, unlawful and unconstitutional actions, and conduct, the Plaintiffs suffered emotional distress, pain, and suffering. Some Plaintiffs suffered physical pain and suffering as well as financial loss, which will be established at trial.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

    i.    a declaration that Defendants, jointly and severally, have violated Plaintiffs' civil rights;

   ii.    compensatory damages in excess of $75,000;

  iii.    pre-judgment interest, attorneys' fees and costs;

  iv.    punitive damages against the individual defendants in their individual capacities; and,

   v.    such other legal and equitable relief as the Court deems just and proper.

## COUNT II
### DEPRIVATION OF RIGHTS GUARANTEED UNDER THE 1ST AND 14TH AMENDMENTS TO THE U. S. CONSTITUTION, ADDRESSABLE VIA 42 U. S. C. §1983; FAILURE TO TRAIN AND SUPERVISE
### PLAINTIFFS V. ALL DEFENDANTS

63.   The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

64.   The actions and inactions of Defendants, which caused Plaintiffs physical and emotional injuries, were the direct result of a failure to properly train and supervise the officials in Chester.

65.   Defendants failed to properly train and supervise their subordinates when they failed to implement and enforce polices that trained political office holders how to properly interact with individuals without violating their civil and Constitutional rights.

66.   At all times relevant hereto, Defendants were aware of the prevalence of Chester government officials engaging in conduct designed to dissuade citizens from participating in lawful protest in violation of their civil and Constitutional rights.

67.   At all times relevant hereto, Defendants encouraged government officials to

11

aggressively interact with citizens involved in lawful protest in violation of their civil and Constitutional rights.

68. At all times relevant hereto, Defendants were aware of the prevalence of government officials aggressively interacting with citizens involved in lawful protest.

69. Upon information and belief, no Chester government officials have been disciplined by Defendants for the above referenced actions. This lack of discipline is a custom and practice at Chester.

70. Despite knowing of the prevalence of the violation of the civil rights of citizens and despite knowing of the importance of implementing and enforcing policies that train government officials on how to properly interact with and handle citizens exercising their right to peaceably assemble, Defendants failed to implement and/or enforce polices that trained staff how to identify and handle these issues.

71. The lack of training, supervision and discipline by Defendants is long-standing and amounts to a custom and practice that is so well settled and permanent at the City of Chester that it virtually constitutes law.

72. Indeed, this custom and practice was the moving force behind the Constitutional violations committed by Defendants Kirkland, West, and Williams against Plaintiffs.

73. Defendants encouraged, tolerated, ratified, and/or were deliberately and maliciously indifferent to the patterns, practices, and customs and/or to the need for the implementation of some, more or different training, supervision,

12

investigation and/or discipline and failed to train, supervise, investigate and/or discipline Defendants Kirkland, West, and Williams in the recognition of individual civil and Constitutional rights.

74. The acts and failures to act of Defendants were objectively unreasonable, and so deliberate and malicious that it would shock the conscience of a reasonable person.

75. Plaintiffs' injuries and damages were a direct and proximate result of Defendants encouragement, toleration, ratification, and/or deliberate indifference to the patterns, practices, and customs and/or to the need for the implementation of some, more or different training, supervision, investigation and/or discipline by failing to train, supervise, investigate and/or discipline Kirkland, West, and Williams in the recognition and treatment of those lawfully exercising their civil and Constitutional rights.

76. As a result, Defendants deprived Plaintiffs of the protections and procedural due process guaranteed them under the First and Fourteenth Amendments to the U.S. Constitution.

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

   i. a declaration that Defendants, jointly and severally, have violated Plaintiffs' civil rights;

   ii. compensatory damages in excess of $75,000;

13

iii.    pre-judgment interest, attorneys' fees and costs;

iv.    punitive damages against the individual defendants in their individual capacities; and,

v.    such other legal and equitable relief as the Court deems just and proper.

## COUNT III
### DEPRIVATION OF RIGHTS GUARANTEED UNDER THE 1ST AND 14TH AMENDMENTS TO THE U. S. CONSTITUTION, ADDRESSABLE VIA 42 U. S. C. §1983; SUPERVISOR LIABILITY
### PLAINTIFFS V. DEFENDANTS KIRKLAND, WEST, AND WILLIAMS

77.  The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

78.  Defendants Kirkland, West, and Williams were present for, had knowledge of, and participated in the Constitutional violations suffered by Plaintiffs on April 23, 2022, as described above.

79.  Defendants Kirkland, West, and Williams can be seen on video confronting and/or actively assisting in the deprivation of Plaintiffs' ability to lawfully exercise their First Amendment rights.

80.  Because of these actions, Plaintiffs suffered bodily injury.

81.  As a further consequence of Defendants' actions, Plaintiffs were placed in fear of serious bodily injury.

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i.    a declaration that Defendants violated Plaintiffs' civil rights;

14

    ii.    compensatory damages in excess of $75,000;

   iii.    prejudgment interest, attorneys' fees and costs;

   iv.    punitive damages against the individual defendants in their individual capacities; and,

    v.    such other legal and equitable relief as the Court deems just and proper.

### STATE LAW CLAIMS

### COUNT IV
### ASSAULT
### PLAINTIFFS VS. DEFENDANT KIRKLAND

82. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

83. Defendant Kirkland placed Plaintiffs in fear of imminent, unwarranted, unprivileged, offensive bodily contact.

84. As a consequence of these actions, Plaintiffs suffered bodily injury.

85. As a further consequence of Defendant's actions, Plaintiffs were placed in fear of serious bodily injury or death.

86. The acts of Defendant Kirkland as set forth above, constituted the tort of assault, all to Plaintiffs great detriment and loss.

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

   vi.    a declaration that Defendant Kirkland has violated Plaintiffs' civil rights;

  vii.    compensatory damages in excess of $75,000;

15

viii.   prejudgment interest, attorneys' fees and costs;

ix.   punitive damages against the individual defendants in their individual capacities; and,

x.   such other legal and equitable relief as the Court deems just and proper.

## COUNT V
## BATTERY
## PLAINTIFFS VS. DEFENDANT KIRKLAND

87.  The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

88.  Defendant intended to subject Plaintiffs to harmful offensive bodily contact and did, in fact, subject them to such bodily contact.

89.  As a consequence of these actions, Plaintiffs suffered bodily injury.

90.  The acts of Defendant Kirkland as set forth above, constituted the tort of battery, all to Plaintiffs' great detriment and loss.

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i.   a declaration that Defendant Kirkland has violated Plaintiffs' civil rights;

ii.   compensatory damages in excess of $75,000;

iii.   prejudgment interest, attorneys' fees and costs;

iv.   punitive damages against the individual defendants in their individual capacities; and,

v.   such other legal and equitable relief as the Court deems just and proper.

16

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## PLAINTIFFS VS. DEFENDANT KIRKLAND

91. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

92. Defendant Kirkland intentionally, recklessly, willfully, and without legal justification, by extreme and outrageous conduct caused severe emotional distress to Plaintiffs.

93. Defendant Kirkland's affirmative act of slapping Plaintiff Ewall's hand and causing Ewall's phone to hit Plaintiff Jennings in the mouth was an intentional demonstration of power and threat of assault or serious bodily injury.

94. Defendant Kirkland harassed Plaintiff Jennings by stalking her in his vehicle in the days following the April 23rd protest.

95. Defendant Kirkland knew, or had reason to know, that Plaintiffs would fear bodily injury when unjustifiably confronted and threatened by him.

96. Defendant Kirkland knowingly and intentionally weaponized the power of his position to place Plaintiffs in fear of bodily injury.

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i.    a declaration that Defendant Kirkland has violated Plaintiffs' civil rights;

ii.   compensatory damages in excess of $75,000;

iii.  prejudgment interest, attorneys' fees and costs;

17

iv.     punitive damages against the individual defendants in their individual capacities;

        and,

v.      such other legal and equitable relief as the Court deems just and proper.

    Plaintiffs hereby demand a jury trial.

                                        /s/ Kevin V. Mincey
                                        Kevin V. Mincey
                                        ID No. 90201
                                        kevin@minceyfitzross.com

                                        /s/ Thomas O. Fitzpatrick
                                        Thomas O. Fitzpatrick
                                        ID No. 93204
                                        tom@minceyfitzross.com

                                        /s/ Riley H. Ross III
                                        Riley H. Ross III
                                        ID No. 204676
                                        riley@minceyfitzross.com

                                        **MINCEY FITZPATRICK ROSS, LLC**.
                                        1650 Market Street, Suite 3600
                                        Philadelphia, PA  19103
                                        215-587-0006
                                        *Counsel for Plaintiffs*

18