## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAJAH JENNINGS and<br>MIKE EWALL | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2:22-cv-02372-PD |
| | : | |
| CITY OF CHESTER, THADDEUS | : | **JURY TRIAL DEMANDED** |
| KIRKLAND, MAYOR, PORTIA | : | |
| WEST, COUNCIL PERSON, | : | |
| ELIZABETH WILLIAMS, COUNCIL | | |
| PERSON | | |

### <u>ORDER</u>

AND NOW, on this _____ day of _____, 2022, upon consideration of the defendants' partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and any response there to, it is hereby ORDERED and DECREED that the motion is GRANTED, AND:

1.   All claims by plaintiff, Tajah Jennings are DISMISSED;

2.   All claims against defendants, Portia West and Elizabeth Williams are DISMISSED;

3.   Count II (<u>Monell</u> Liability) is DISMISSED as to all defendants; and

4.   All claims against the City of Chester and any individual defendant in his or her "official capacity" are DISMISSED.

**BY THE COURT:**

_____
Paul S. Diamond, U.S.D.J.

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TAJAH JENNINGS and MIKE EWALL | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2:22-cv-02372-PD |
| | : | |
| CITY OF CHESTER, THADDEUS KIRKLAND, MAYOR, PORTIA WEST, COUNCIL PERSON, ELIZABETH WILLIAMS, COUNCIL PERSON | : : : : | **JURY TRIAL DEMANDED** |

**DEFENDANTS' PARTIAL MOTION
DISMISS PURSUANT TO FED. R. CIV. PRO. 12(b)(6)**

Defendants, Thaddeus Kirkland, Portia West, Elizabeth Williams, and the City of Chester, by and through their attorneys, Bennett, Bricklin & Saltzburg LLC, move for the partial dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and aver as follows in support of their motion:

1.      In this matter, plaintiffs, Tajah Jennings and Mike Ewall, seek to recover for alleged violations of their civil rights under the First Amendment, 42 U.S.C.A. § 1983, and state tort law, in relation to an encounter they had with the defendant council members at a protest in the City of Chester on April 23, 2022, See Exhibit A, complaint.

2.      For the reasons more fully set out in the attached brief, (1) all claims by plaintiff Tajah Jennings should be dismissed; (2) all claims against defendants, Portia West and Elizabeth Williams should be dismissed; (3) plaintiffs' Monell claims against all defendants should be dismissed; and (4) all claims against the City of Chester should be dismissed.

**WHEREFORE,** defendants respectfully request that their motion be GRANTED, and that claims brought by plaintiff Jennings, all claims against defendants West and Williams, all Monell claims, and all claims against the City of Chester be DISMISSED.

Respectfully submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

By: /s Nicholas A. Cummins
   NICHOLAS A. CUMMINS
   Attorney I.D. 203238
   DANIEL B. LENGEMAN
   Attorney I.D. 330749
   Centre Square, West Tower
   1500 Market Street, 32nd Floor
   Philadelphia, PA  19102
   (215) 665-3328
   cummins@bbs-law.com
   Attorneys for Defendants

Date: September 7, 2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TAJAH JENNINGS and | : | |
| MIKE EWALL | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2:22-cv-02372-PD |
| | : | |
| CITY OF CHESTER, THADDEUS | : | **JURY TRIAL DEMANDED** |
| KIRKLAND, MAYOR, PORTIA | : | |
| WEST, COUNCIL PERSON, | : | |
| ELIZABETH WILLIAMS, COUNCIL | | |
| PERSON | | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO**
**DISMISS PURSUANT TO FED. R. CIV. PRO. 12(b)(6)**

Defendants, Thaddeus Kirkland, Portia West, Elizabeth Williams, and the City of Chester,

by and through their attorneys, Bennett, Bricklin & Saltzburg LLC, move for the partial dismissal

of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and submit this brief in

support of their motion.

## I.  FACTUAL OVERVIEW[1]

This is a civil rights action brought by plaintiffs Tajah Jennings and Mike Ewall arising out

of their alleged interactions with defendants, Mayor Thaddeus Kirkland, Council Woman Portia

West, and Council Woman Elizabeth Williams of the City of Chester.  See Exhibit A, Complaint.

The complaint alleges that on April 23, 2022, plaintiff, Mike Ewall, along with other

citizens planned to attend a protest regarding a trash incinerator located in the City of Chester.  See

Exhibit A at ¶¶ 15-16.  The protest included a planned march down Route 291 from Chester City

to Hall to the trash incinerator.  Id. at ¶ 18.

---

[1]The allegations of the complaint are taken as true for purposes of this motion to dismiss,
but are not admitted by the defendants.

The complaint alleges that the protesters, with permission, parked their vehicles in private parking spaces located at the Delaware County Historical Society (DCHS).  Id. at ¶ 19.  Although the protesters utilized the parking lot at DCHS, the complaint alleges that the separate free parking lot at City Hall was closed on the morning of the protest.  Id. at ¶ 20.  The complaint alleges that Council Woman Williams had instructed security officers not to allow the protesters to utilize the parking lot.  Id. at 22.  The complaint does not allege that this closure affected the protest in any way, as alternate parking had been arranged at DCHS and was utilized.  Id. at ¶ 19.  The complaint also does not allege that either of the named plaintiffs were unable to attend the protest because they were unable to find parking.  Indeed, plaintiff, Tajah Jennings, resides along the march route, and walked to the event.  Id. at ¶¶ 25-17.

The complaint further alleges that defendants Kirkland, West, and Williams gave instructions to parking authority officers to ticket vehicles of individuals who participated in the protest.  Id. at ¶ 23.  The complaint does not allege that either plaintiff received a parking ticket.

The complaint alleges that plaintiff Jennings was not an initial participant in the protest.  Rather, Ms. Jennings is alleged to have lived along the march route.  Id. at ¶ 25.  Hearing the protest, Ms. Jennings came out of her home to speak with plaintiff Ewall and other protesters to obtain information about their protest.  Id. at ¶¶ 24-27.

The complaint alleges that while plaintiff Jennings was speaking with plaintiff Ewall, the protesters were confronted by defendants Kirkland, West and Williams, who had driven up to the protesters in a vehicle.  Id. at ¶ 27.  In particular, plaintiffs allege that defendant Kirkland used a loudspeaker to threaten plaintiff Ewall and another protester.  Id. at ¶ 27.  The complaint does not allege that any threats were directed to plaintiff Jennings.

2

The complaint claims that defendant Kirkland then exited the truck where he "confronted Plaintiff Ewall." Id. at ¶ 29.  Plaintiff Jennings allegedly stepped between the two to deescalate the situation, but defendant Kirkland is alleged to have continued to yell at plaintiff Ewall as plaintiff Jennings stood between them. Id. at ¶ 31.  During this process, plaintiff Ewall was holding his cell phone in his hands as if he were recording the incident. Id. at ¶ 32.  Plaintiffs allege that "[d]efendant Kirkland slapped Plaintiff Ewall's hand to make him drop the phone and prevent him from recording the incident." Id. at ¶ 33.  The complaint alleges, "[a]fter having his hand hit by Defendant Kirkland, Plaintiff Ewall's phone flew from his hand and struck Plaintiff Jennings in the face, causing injury." Id. at ¶ 34.  The complaint does not allege that defendant Kirkland yelled at plaintiff Jennings, or that any of his conduct was directed was toward plaintiff Jennings.

The complaint alleges that plaintiff Jennings then went into her home to call 911. Id. at ¶ 36.  Plaintiff Jennings claims that after the call, she opened her door for air, and that defendant Kirkland was standing at her front door. Id. at ¶¶ 37-38.  Plaintiff Jennings alleges that she then closed the door and waited for the police to arrive. Id. at ¶ 39.  Plaintiff Jennings further alleges that, the following day, "[d]efendant Kirkland slowly followed her in his vehicle" as she walked her dog down the street. Id. at ¶ 41.  The complaint makes no allegations regarding the alleged conduct, location or participation of defendants Williams and West during any of the interactions described above.

The complaint alleges that unidentified "Chester officials" have "taken retaliatory action, including issuing citations, against individuals exercising the First Amendment rights." Id. at ¶ 41.  The only example of such conduct given in the complaint is the alleged ticketing of protesters' vehicles on the day in question. Id. at ¶ 43.  The complaint, without specifics, alleges that

3

unidentified "Chester officials" "routinely confront protesters and individuals exercising their right to free speech [and] often clash with those making statements that are averse to the interests of Chester officials." Id. at ¶ 44. The complaint further alleges, without explanation, that the City "does not perform any comprehensive review of incidents sufficient to detect patterns of misconduct by a particular official," and that "City officials" "do not use de-escalation techniques to avoid or minimize conflict," but instead allegedly respond with impatience and sometimes escalate incidents. Id. Without detail or example, the complaint pleads that "Chester officials engage in a pattern or practice of violating First Amendment rights, including the right to record public officials' activities and the right to peaceably assemble." Id. at ¶ 47. The complaint does not set out a single example of this alleged pattern.

Count I of the complaint asserts a section 1983 claim against "all defendants" for "retaliation against free expression" in alleged violation of the First Amendment. Id. at Count I. Count III asserts a section 1983 "supervisor liability" claim against the three individual defendants, alleging that they "were present for, had knowledge of, and participated in the Constitutional violations suffered by Plaintiffs…." Id. at Count III.

Count II asserts a section 1983 claim against "all defendants" for "failure to train and supervise." Id. at Count II. This appears to be an attempt to plead a section 1983 "Monell claim." Count II alleges in boilerplate fashion that all defendants "failed to properly train and supervise their subordinates when they failed to implement and enforce policies that trained political office holders how to properly interact with individuals without violating their… Constitutional rights," and, "[u]pon information and belief," that no Chester official has been disciplined for the interactions with the plaintiffs. Id. at ¶¶ 65, 69. These are alleged to be policies, customs and

practices that caused the alleged violation of plaintiffs' civil rights.  Id. at ¶ 71-72.  Count II identifies no policymaker who was involved in these alleged policies or customs, and does not allege that any of the individual defendants are policymakers.  The complaint also does not allege that any of the individual defendants are sued in their "official capacity."

Counts IV, V and VI assert state law claims for assault, battery and intentional infliction of emotional distress, respectively, only against defendant Kirkland.  Id. at Counts IV, V and VI. Both plaintiffs purport to present these state law claims.

## II.   ARGUMENT

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for the dismissal of a claim for the "failure to state a claim for which relief can be granted" through a pre-pleading motion. Fed. R. Civ. Pro. 12(b)(6).  To survive a motion to dismiss, a complaint must allege facts that adequately set forth each of the essential elements of a cause of action.  Nami v. Fauver, 82 F.3d 63, 65 (3rd Cir. 1996).  Although the Court must accept all well-pleaded factual allegations contained in the complaint, it need not credit bare allegations, conclusory assertions or unwarranted factual inferences.  Maio v. Aetna, Inc., 221 F.3d 472, 485 n.12 (3d Cir. 2000); Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997); Kost v. Kozakiewwicz, 1 F.3d 176, 183 (3d Cir. 1993); Perry v. Grant, 775 F.Supp. 821 (M.D. Pa. 1991).  Bald assertions and conclusions of law will similarly not survive a motion to dismiss.  Gardiner v. Mercyhurst College, 942 F.Supp. 1050, 1052 (M.D. Pa. 1995).  In short, the complaint's "[f]actual allegations **must be enough to raise a right to relief above the speculative level**..., on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...."  Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (U.S. 2007) (emphasis added, citations omitted). "Where a complaint pleads fact that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), quoting, Twombly, 550 U.S. at 557, 127 S.Ct. at 1955.

### B.    All Claims by Plaintiff Tajah Jennings Should be Dismissed.

All claims by plaintiff Tajah Jennings should be dismissed.  The section 1983 claims should be dismissed because the complaint does not allege any retaliatory conduct directed against her. The state law claims – all intentional torts – should be dismissed, because the complaint does not allege any conduct directed towards her or intended to cause her harm.

#### *1.    All Section 1983 Claims by Plaintiff Jennings Should be Dismissed.*

Section 1983 provides a private cause of action to citizens for deprivations of their constitutional rights by a person acting under the color of state law.  42 U.S.C.A. § 1983[2]  "By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law." Morse v. Lower Merion School Dist., 132 F.3d 902, 906-07 (3d Cir. 1997), citing, Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689 (1979).  "In order to state a claim, plaintiff must show that the defendants, acting under color of state law, deprived [her] of a right secured by the Constitution or the laws of the United States." Id., citing, Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981).

To make out a First Amendment retaliation claim, the plaintiffs must plead three elements:

(1) constitutionally protected conduct;

---

2 Every person, who under color of any statute, ordinance... custom, or usage, of any State..., subjects, or causes to be subjected, any citizen of the United States... to the deprivation of any rights... secured by the Constitution and laws, shall be liable to the party injured in an action at law....

(2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and;

(3) a causal link between the constitutionally protected conduct and the retaliatory action."

Thomas v. Independence Twp., 463 F. 3d 285, 296 (3d Cir. 2006) (citations omitted).  "[D]e minimis responses to protected speech such as criticism, false accusations or verbal reprimands do not rise to the level of actionable retaliation."  Herman v. Hosterman, No. 11-898, 2011 U.S. Dist. LEXIS 120750 (M.D. Pa. Oct. 9, 2011) (citing, Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003)).  Furthermore, "a plaintiff must show that 'the protected activity was a substantial or motivating factor in the alleged retaliatory action.'"  Id. at *8 (quoting, Baldassare v. New Jersey, 250 F.3d 18, 195 (3d Cir. 2001)).

Plaintiff Jennings' First Amendment retaliation claim fails because she does not allege any retaliatory action directed against her, nor does she allege that any action taken was in response to her exercise of protected conduct.  The complaint alleges that defendant Kirkland threatened defendant Ewall, that defendant Kirkland became involved in a verbal altercation with defendant Ewall, and that defendant Kirkland slapped defendant Ewall's phone out of his hand.  The complaint does not allege that *any* of this conduct was directed at defendant Jennings.  The sum total of defendant Jennings' involvement is that she was struck by the phone when it flew from defendant Ewall's hand.  There is nothing about this interaction which suggests that the phone was intended to strike defendant Jennings, and certainly nothing that suggests that the phone striking her was in retaliation for her exercise of her First Amendment rights.

The only conduct even arguably directed towards defendant Jennings are the allegations that defendant Kirkland stood on her porch shortly after the incident, and that he followed her

briefly on the street the day after the incident. Plaintiff pleads no facts suggesting that either of these actions were taken in retaliation for plaintiff Jennings exercise of her First Amendment rights. The complaint likewise pleads no facts suggesting that either of these actions would deter a person of ordinary firmness from exercising their constitutional rights. Indeed, plaintiff does not even make these necessary allegations in conclusory fashion.

To survive a motion to dismiss, plaintiff must plead *facts* raising her right to relief above the speculative level, from merely possible to plausible. Since plaintiff Jennings has failed to allege any facts alleging that she was the subject of conduct undertaken in retaliation for her First Amendment rights, her First Amendment retaliation claim must be dismissed.

The insufficiency of plaintiff's First Amendment retaliation claim necessarily mandates the dismissal of her Monell and supervisory liability claims. Both a Monell claim and a supervisory liability claim require an underlying constitutional violation. K.W. v. SEPTA, 760 Fed. Appx. 104, 109 (3d Cir. 2010) (citations omitted). If plaintiff's constitutional rights have not been violated, then she also cannot establish a Monell or supervisory liability claim. Id. For these reasons, all section 1983 claims by plaintiff Jennings should be dismissed.

### 2.    All State Law Claims by Plaintiff Jennings Should be Dismissed.

Plaintiff Jennings presents state law claims against defendant Kirkland for assault, battery and intentional infliction of emotional distress in allegedly causing defendant Ewall's phone to strike her in her face. These claims must be dismissed for the simple reason that the complaint plausibly pleads, at most, negligence, by defendant Kirkland in causing the phone to strike plaintiff Jennings. Since defendant Kirkland is alleged to be the Mayor of the City of Chester acting in the course and scope of his duties, the Political Subdivision Tort Claims Act immunizes Mayor

Kirkland for all the claims at issue in the absence of "willful misconduct." 42 Pa. Cons. Stat. Ann.

§ 8550.   Negligence claims are categorically beneath the willful misconduct standard.

Consequently, all state law claim by defendant Jennings should be dismissed.

"Assault is an **intentional attempt** by force to do an injury to the person of another, and a

battery is committed whenever the violence menaced in an assault is done, though in ever so small

a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (emphasis

added).   More specifically, "assault required that the defendant act with **the intent** to place the

plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff

actually experience such apprehension." Minarsky v. Yadlosky, 2017 U.S. Dist. LEXIS 42352 at

*10 (M.D. Pa. Mar. 22, 2017 (emphasis added, citations omitted).   "Battery requires proof that the

defendant acted with **the intent** to cause harmful or offensive bodily contact with the person of

the plaintiff and that such contact actually followed." Id. (emphasis added, citations omitted).

Intentional infliction of emotional distress (IIED) requires "extreme and outrageous

conduct intentionally or recklessly caus[ing] sever emotional distress…." Hoy v. Angelone, 720

A.2d 745, 753 (Pa. 1998).   Conduct is only "extreme and outrageous" when it "so extreme and

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized society." Id. at 754.   "[I]t has not been enough that the defendant has

acted   with   intent   which   is   tortious   or   even   criminal,   or   that   he   has   intended   to

inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree

of aggravation that would entitle the plaintiff to punitive damages for another tort." Id. (collecting

examples   of   extreme   and   outrageous   conduct).     Importantly,   "[t]he   extreme   and   outrageous

conduct **must be directed at [the plaintiff]**." Bootay v. KBR, Inc., 437 Fed. Appx. 140, 146 (3d

Cir. 2011) (citing, <u>Daughen v. Fox</u>, 539 A.2d 858, 864 (Pa. Super. 1988)) (dismissing IIED claim against manufacturer based on exposure of military member to chemicals during deployment because the conduct was not directed toward plaintiff).

Each of plaintiff Jennings' state law claims require that the conduct in question be directed at her and be intended to cause her immediate fear of offensive bodily contact, offensive bodily contact and/or severe emotional distress.  The complaint contains no such allegations.  Rather, the complaint pleads that defendant Kirkland struck plaintiff Ewall's phone from his hand, which then flew through the air and struck plaintiff Jennings.  The complaint pleads no conduct directed towards plaintiff Jennings, and, at most, pleads negligent conduct directed towards her.  In addition, it is clear that defendant Kirkland's conduct does not qualify as "extreme and outrageous."  For these reasons, all of plaintiff Jennings' state law claims should be dismissed.

Furthermore, defendant Kirkland is immune from plaintiff Jennings' state law claims under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541, et seq. (PSTCA).  Under the PSTCA, local agencies, such as the City of Chester, and their employees, are immune from tort suits unless the claim falls within one of nine statutory exceptions to that immunity.  42 Pa. Cons. Stat. Ann. § 8541 (grant of immunity); 42 Pa. Cons. Stat. Ann. § 8542 (exceptions to immunity); 42 Pa. Cons. Stat. Ann. § 8545 (employee immunity).  Claims for assault, battery, and IIED do not fall within any of the exceptions to PSTCA immunity.  42 Pa. Cons. Stat. Ann. § 8542.

The PSTCA further provides, however, that an employee of local agency can lose his or her PSTCA immunity if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct." 42 Pa. Const. Stat. Ann. § 8550.  "Pennsylvania courts and the Third Circuit recognize that 'willful

misconduct' is a 'demanding level of fault.'"   <u>Sullivan v. Warminster Twp.</u>, No. 07-4447, 2010 U.S. Dist. LEXIS 53409 at *20 (E.D. Pa. May 27, 2010) (quoting, <u>Sanford v. Stiles</u>, 456 F.3d 298, 315 (3d Cir. 2005)).   Willful misconduct "means 'that the actor desired to bring about the result that followed or at least that he was aware it was substantially certain to ensue.'"   <u>Id</u>. (quoting, <u>Keenan v. City of Philadelphia</u>, 936 A.2d 566, 569 n. 9 (Pa. Cmwlth. 2007)); <u>Sanford</u>, 456 F.3d at 315.   As discussed above, plaintiff pleads no facts from which it could be inferred that defendant Kirkland engaged in any willful misconduct directed towards plaintiff Jennings.    As such, defendant Kirkland is immune from plaintiff's state law claims, and these claims should be dismissed for this additional reason.

  **C. <u>All Claims Against Defendants Portia West and Elizabeth Williams Should be Dismissed.</u>**

  It is well settled that "a defendant in a civil rights action must have personal involvement in the alleged wrongs to be' liable."   <u>Sutton v. Rasheed</u>, 323 F.3d 236, 249-50 (3d Cir. 2003). Plaintiffs' complaint pleads no personal involvement by defendants West and Williams in any alleged First Amendment retaliatory conduct directed against either plaintiff[3].   Indeed, the sum total of the allegations against defendants West and Williams is that they arrived on the scene in a vehicle.   <u>See</u> Exhibit A at ¶ 27.   Beyond this, the complaint contains no allegations of conduct by defendants West and Williams, let alone retaliatory conduct.   Thus, plaintiffs' first amendment retaliatory claim against defendants West and Williams (Count I) should be dismissed.

---

3 While the complaint alleges that defendants Williams and West were involved in instructions with respect to parking and ticketing of parked vehicles, plaintiffs do not allege that they suffered any harm as a result of this alleged conduct. Thus, to the extent this conduct could be considered "retaliatory," it was not directed to plaintiffs.

Presumably in recognition of the fact that defendants Williams and West did not participate in any alleged retaliatory conduct, Count III purports to plead a claim of supervisory liability against defendants Williams and West.  This claim also fails.

A claim for supervisory liability may proceed on one of two theories.  First, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm.'"  A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  Id.

As to the first theory, plaintiff's complaint does not plead that defendants Council Women West or Williams were "policymakers."   Whether one is a "policymaker" turns on "which official has final, unreviewable discretion to make a decision or take an action."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990).  Plaintiff does not allege that *any* of the defendants were policymakers, and alleges no facts to suggest that they were.  See Light v. Blair, No. 19-5107, 2020 U.S. Dist. LEXIS 197309, *7 (E.D. Pa. Oct. 23, 2020) (dismissing Monell claim on basis that conclusory statement that Mayor Kirkland was a "final decision maker" was insufficient under the pleading standards to show that he was a policymaker).  Consequently, plaintiff cannot proceed on the first theory of supervisory liability.

As to the second theory, plaintiffs plead no facts to show that Council Woman West or Council Woman Williams were "supervisors" of Mayor Kirkland, or that Mayor Kirkland was their "subordinate."  The complaint also pleads no facts suggesting that defendants Williams and

12

West directed defendant Kirkland's conduct, or that they "acquiesced" (or even had an opportunity to acquiesce") in defendant Kirkland's alleged conduct.  The complaint is essentially silent as to defendants West and Williams' conduct during the events in question.  Consequently, the supervisory liability claim (Count III) against them must be dismissed.

As to plaintiff's <u>Monell</u> theory of liability (Count II), as more fully discussed below, a <u>Monell</u> theory of liability is viable only against a municipality or a "policymaker" in his or her official capacity.  Since defendants West and Williams are not alleged to by policymakers, and are not sued in their "official capacity," plaintiff's <u>Monell</u> claim against them (Count II) must be dismissed.

**D.      Plaintiffs' _Monell_ Claim, and All Claims Against the City of Chester, Must be Dismissed.**

As a preliminary matter, as more fully discussed below, a section 1983 claim is only viable against a municipality on a <u>Monell</u> theory of liability.  Consequently, Counts I and III against the City of Chester should be dismissed for this reason alone.  The <u>Monell</u> claim must be dismissed as to all individual defendants because they are not alleged to be "policymakers" sued in their "official capacity," and because plaintiff has failed sufficiently plead a policy or custom of the City of Chester which directly caused their constitutional injuries.

"[A] municipality cannot be held liable _solely_ because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a _respondeat superior_ theory."  <u>Monell v. Dept. of Gen. Srvs.</u>, 436 U.S. 658, 691, 98 S.Ct 2018, 2036 1978).  A municipality may only be held liable when the unconstitutional conduct by the state-actor "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such a custom has not

13

received formal approval through the body's official decision making channels." Id. at 690, 98 S.Ct. at 2035-36. "Thus, [the] first inquiry in any case alleging municipal liability under § 1983 is the question of whether **there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.**" Collins v. City of Harker Heights, 503 U.S. 115, 123, 112 S.Ct. 1061, 1067, 117 L.Ed.2d 261 (2002) (citations omitted, emphasis added). It is "only where the municipality itself causes the constitutional violation at issue" through the execution of its policy or custom, that the municipality may be liable. Id. (citations omitted).

There are two potential paths to municipal liability - policy or custom. "Policy is made when a 'decision maker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict.'" Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990), quoting, Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299 (1986). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials are so permanent and well settled' as to virtually constitute law." Id., quoting, Monell, 436 U.S. at 690, 98 S.Ct. at 2035. Regardless of whether a plaintiff pursues the claim on custom or policy grounds, "it is incumbent upon a plaintiff to show that a **policymaker** is responsible either for the policy, or through acquiescence, for the custom." Id. (emphasis added). Whether one is a "policymaker" turns on "which official has final, unreviewable discretion to make a decision or take an action." Id. at 1481.

A Monell claim is potentially viable for the failure to adequately train, supervise or discipline an employee in an otherwise constitutional policy, "but only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388, 109. S.Ct. 1197, 1204 (1989). This is

because "municipal liability attaches under § 1983 where - and only where - **a deliberate choice to follow a course of action is made from among various alternatives**" by city policy makers. City of Canton, 489 U.S. at 389, 109 S.Ct. at 1205 (emphasis added, citations omitted).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 563 U.S. at —, 131 S.Ct. at 1360, citing, Bryan Cty., 520 U.S. at 410, 117 S.Ct. at 1382. This requires a showing that actual municipal policy makers "are on actual or constructive notice that a particular omission in their ... program causes city employees to violate a citizens' constitutional rights ... ." Id. "**A pattern of similar constitutional violations by untrained employees** is 'ordinarily necessary' to demonstrate deliberate indifference" in a "failure to" claim. Id. at —, 131 S.Ct. at 1360 (emphasis added), citing, Bryan Cty., 520 U.S. at 409, 117 S.Ct. at 1382. "Where the policy or custom at issue is not itself unconstitutional, courts require a '**heavy, if not insurmountable' burden on a plaintiff to prove liability as a result of inadequate, as opposed to unconstitutional, training or supervision of police officers.**" Artiles v. Vitanza, 2009 WL 2426259 at *29, (D.N.J. Aug. 6, 2009) (citations omitted, emphasis added).

"That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." City of Canton, 489 U.S. at 390-91, 109 S.Ct. at 1206. (citations omitted). Nor can liability be imposed simply because "an otherwise sound program has occasionally been negligently administered." Id. at 391, 109 S.Ct. at 1206. It is also insufficient to show that a particular harm "could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." Id. Liability also fails to

attach when an adequately trained officer makes a mistake.  Id.

Thus, failure to train liability may only be imposed when the failure to train is itself a custom or policy, and that failure amounts to a deliberate indifference to the constitutional rights of others based upon a pattern of prior violations by untrained officers which put the municipality on notice of the deficiencies in its program.  As mandated by Iqbal and Twombly, *supra*, as well as their progeny, a plaintiff may not rely upon formulaic recitations of the elements of a Monell claim, nor may a plaintiff rely upon conclusions.  Instead, a plaintiff must plead *facts* which, if taken as true, raise her entitlement to relief from merely "possible" to "plausible."  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949, quoting, Twombly, 550 U.S. at 557, 127 S.Ct. at 1955.

In Iqbal, *supra*, the Supreme Court addressed allegations which were merely formulaic, and insufficient to meet the federal pleading standards.  In that case, a Guantanamo Bay detainee pursued a Bivens action against members of the federal government.  In finding that plaintiff's complaint failed to plausibly plead religious discrimination, it found that an allegation the defendants, "'knew of, condoned, and willfully and maliciously agreed to subject him' to harsh conditions of confinement, 'as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest," was merely a conclusion not entitled to be assumed true.  Id. at 680-81.  The same was true with respect to plaintiff's allegation that one defendant was the "principal architect" of the policy, and that another was "instrumental" in adopting it.  Id.

In McTernan v. City of York, Pa., 564 F.3d 636 (3d Cir. 2009), the Third Circuit Court of Appeals dismissed a Monell claim against a police department for failure to satisfy Iqbal and Twombly.  In that case, the Third Circuit emphasized that a plaintiff "must identify a custom or

16

policy, and specify what exactly that custom or policy was." Id. at 658 (citations omitted). Likewise, the plaintiff must plead involvement by a municipal decisionmaker. Id. at 658-59. It found that when the complaint makes no allegation that any policy maker was aware of the conduct, let alone that he or she directed the conduct, the complaint is insufficient. Id. at 659. The Third Circuit has also found that "[m]ere conclusory allegations ... that the defendants deliberately elected not to train are not enough to support a constitutional claim." Freedman v. City of Allentown, PA, 853 F.2d 1111, 1117 (3d. Cir. 1988).

Finally, a claim against a state actor in his or her "official capacity" is a synonym for a claim against the municipality itself. Kentucky v. Graham, 473 U.S. 159, 168, 105 S.Ct. 3099, 3105-06 (1985). Thus, a Monell claim may be presented against a policy maker in his or her "official capacity," which is functionally simply a claim against the municipality.

As a preliminary matter, the defendants acknowledge that, under certain circumstances, "[a]n official with policymaking authority can create official policy, even by rendering a single decision." McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005). As discussed above, plaintiff has not alleged that any of the three individual defendants was a "policymaker," and previous case law has held that a bare allegation that defendant Kirkland, specifically, was a "final decisionmaker" was insufficient to plead Monell liability. Light, 2020 U.S. Dist. LEXIS 197309 at *7. Thus, the specific conduct of the named defendants cannot be deemed to be "policy" for purposes of Monell liability. Moreover, since none of the individual defendants are alleged to be "policymakers," and none are sued in their "official capacities," all Monell claims against them directly must be dismissed.

17

Turning then to the question of "policy or custom," the foregoing authorities make clear that plaintiffs have failed to sufficiently plead a Monell claim against the City of Chester.  As an initial matter, the failure to identify a policymaker responsible for the alleged policies identified in the complaint mandates that the claim be dismissed.  See McTiernan, *supra*.

Further, plaintiffs offer no factual averments in support of the policies alleged in the complaint.  Plaintiffs simply make the conclusory allegation that the defendants failed to implement and enforce policies that trained political office holders how to properly interact with individuals without violating their civil and constitutional rights.  The complaint offers no facts to support these claims, and does not discuss in what ways the existing training or supervisory practices were insufficient.

To the extent plaintiffs allege a failure to train, plaintiffs plead no facts suggesting that a pattern of prior similar violations has occurred, let alone that an identified policy maker was on notice of those violations, and nonetheless disregarded them.  Such a showing is necessary to establish deliberate indifference. The complaint merely states, without support, that defendants were aware of the prevalence of government officials aggressively interacting with citizens involved in lawful protest.

While plaintiffs obliquely refer to an alleged incidents involving defendants engaging in aggressive conduct designed to dissuade unnamed citizens from participating in lawful protest, plaintiffs plead no facts to support a single prior occurrence of such an incident.  Plaintiffs do not plead when, to whom, or under what circumstances this alleged incident or incidents occurred. They plead no facts to suggest that the alleged incidents resulted from insufficient training, improper discipline, or an unconstitutional policy or custom.  While plaintiffs insist that defendants

18

were aware of the prevalence of this type of conduct, they plead no facts whatsoever to suggest that the City was aware of any one such incident, or that discipline was merited and yet no provided. These vague reference do not even plead sufficient facts to identify one prior incident, much less a pattern. This is similar to the allegations in Jacobs v. Palmer, where the complaint made vague references to previous incidents to imply a pattern. Jacobs *supra* No. 14-CV-5797, 2015 WL 1033294 (E.D. Pa. Mar. 10, 2015). The Jacobs Court identified that references to past instances do not establish a pattern, particularly where the complaint does not even contain facts clarifying what happened in the single past incident. Id.

Plaintiffs have not pled a single fact in support of their Monell claim.  Consequently, the Monell claim should be dismissed, including all claims against the City of Chester.

## III.   **CONCLUSIONS**

As more fully discussed above, all claims brought by plaintiff Jennings should be dismissed, all claims against defendants West and Williams should be dismissed, and plaintiffs' Monell claim, including all claims against the City of Chester, should be dismissed.

Respectfully submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

By:      /s Nicholas A. Cummins
NICHOLAS A. CUMMINS
Attorney I.D. 203238
DANIEL B. LENGEMAN
Attorney I.D. 330749
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA  19102
(215) 665-3328
cummins@bbs-law.com
Attorneys for Defendants

Date:   September 7, 2022

19

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TAJAH JENNINGS and MIKE EWALL | : |
| | : CIVIL ACTION |
| | : |
| v. | : NO. 2:22-cv-02372-PD |
| | : |
| CITY OF CHESTER, THADDEUS KIRKLAND, MAYOR, PORTIA WEST, COUNCIL PERSON, ELIZABETH WILLIAMS, COUNCIL PERSON | : **JURY TRIAL DEMANDED** : : |

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that a true and correct copy of the foregoing Motion to Dismiss plaintiffs' complaint was served on this date on all interested counsel by electronic filing with the Court.

**BENNETT, BRICKLIN & SALTZBURG LLC**

By: _____
NICHOLAS A. CUMMINS
Attorney I.D. 203238
DANIEL B. LENGEMAN
Attorney I.D. 330749
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA  19102
(215) 665-3328
cummins@bbs-law.com
Attorney for Defendants

Date:  <u>September 7, 2022</u>

# <u>Exhibit A</u>

MINCEY FITZPATRICK ROSS, LLC                         Counsel for Plaintiffs
BY:    Kevin V. Mincey, Esquire
       Thomas O. Fitzpatrick, Esquire
       Riley H. Ross III, Esquire
IDENTIFICATION NOs.: 90201/93204/204676
1650 Market Street, Suite 3600
Philadelphia, PA 19103
215-587-0006

### IN THE UNITED STATES OF AMERICA DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAJAH JENNINGS<br>Chester, PA<br><br>and<br><br>MIKE EWALL<br>Philadelphia, PA<br><br><br>Plaintiffs<br>v.<br><br>CITY OF CHESTER<br>1150 Engle Street<br>Chester, PA 19013<br><br>THADDEUS KIRKLAND, MAYOR<br>City of Chester<br>1150 Engle Street<br>Chester, PA 19013<br><br>PORTIA WEST, COUNCIL PERSON<br>City of Chester<br>1150 Engle Street<br>Chester, PA 19013<br><br>ELIZABETH WILLIAMS, COUNCIL PERSON<br>City of Chester<br>1150 Engle Street<br>Chester, PA 19013<br><br>Defendants. | IN THE UNITED STATES<br>DISTRICT COURT FOR THE<br>EASTERN DISTRICT OF<br>PENNSYLVANIA |

## **INTRODUCTION**

In the incident described below, the Chief Executive of the City of Chester, located in Delaware County, Pennsylvania, along with two members of Chester's

1

governing body who observed and failed to intervene, physically assaulted a man to prevent him from recording official activity causing injury to a woman who was trying to deescalate the confrontation in the process. Defendant Kirkland violated the rights guaranteed to the Plaintiffs and others under the First Amendment of the United States Constitution by physically confronting, threatening, and retaliating against those who protest the decisions made while he has served as the Mayor of the City of Chester.

The Plaintiffs allege as follows:

## JURISDICTION

1. This action is brought pursuant to 28 U.S.C. §1331 and §1343. This action arises under the provisions of the Civil Rights Act of 1866, as amended 42 U.S.C. §1983. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to adjudicate claims arising under state law.

## VENUE

2. Venue is appropriately laid in this Court pursuant to 28 U.S.C. §1391(b) in that the actions complained of took place in the City of Chester, which is within the bounds of the Eastern District, and Defendants carry on business within the Eastern District.

## PARTIES

3. Plaintiff, Tajah Jennings, is an adult individual and citizen of the United States who resides in the City of Chester, PA.

4. Plaintiff, Mike Ewall, is an adult individual and citizen of the United States who resides in Philadelphia, PA.

5. A defendant is the City of Chester (Chester), a political subdivision, and governmental entity in the Commonwealth of Pennsylvania, organized and

2

existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 1150 Engle Street, Chester, PA 19013.

6.    A defendant is Thaddeus Kirkland, Mayor of the City of Chester, having a main place of business at 1150 Engle Street, Chester, PA 19013. At all times relevant hereto, Mayor Kirkland participated in and was the cause of Plaintiffs' injuries.

7.    A defendant is Portia West, Council Person in the City of Chester, having a main place of business at 1150 Engle Street, Chester, PA 19013. At all times relevant hereto, Councilwoman West participated in and was the cause of Plaintiffs' injuries.

8.    A defendant is Elizabeth Williams, Council Person in the City of Chester, having a main place of business at 1150 Engle Street, Chester, PA 19013. At all times relevant hereto, Councilwoman Williams participated in and was the cause of Plaintiffs' injuries.

9.    The complained of acts and failures to act by the Defendants herein were objectively unreasonable and were intended to cause harm.

10.    At all times relevant to this action, the within described corporate and individual Defendants were acting under color of law, and the individual Defendants were acting in the course and scope of their duties with their respective corporate or departmental employers, to wit, the City of Chester, and in furtherance of those corporate employers' business objectives and purposes.

11.    At all times relevant to this action, the within described corporate employers, to wit, the City of Chester, were liable for the acts and failures to act of the

3

individual Defendants under theories of agency, master-servant, respondeat superior and/or control or right of control.

12. Defendants engage in a pattern and practice of conduct that violates the First and Fourteenth amendments to the United States Constitution.

13. These patterns and practices include engaging in retaliation for protected expression and impeding individuals right to record official activities conducted in public in violation of the First Amendment.

14. These patterns and practice are further reflected in, and caused by, the Defendants' failure to establish consistent policies and procedures, effective training, and meaningful supervision to appropriately guide and monitor the actions of city officials; failure to establish reliable systems to detect and appropriately discipline and hold accountable city officials for misconduct.

## OPERATIVE FACTS

15. On April 23, 2022, Chester residents and other activists met at Chester City Hall to participate in the second annual "Environmental Justice Day" march.

16. The protest, held the day after "Earth Day," was organized to protest the Covanta Delaware Valley trash incinerator, which is Chester City's largest industrial air polluter and largest environmental violator.

17. Covanta owns the trash incinerator in Chester and, according to data from the U.S. Environmental Protection Agency, is one of the largest polluters of its kind in the country.[1]

---

[1] See https://www.epa.gov/air-emissions-inventories/2017-national-emissions-inventory-nei-data

4

18. The protestors, including citizens of Chester, Plaintiff Ewall and others, planned to march down Pennsylvania Route 291 from Chester City Hall to the incinerator.

19. Protestors utilized the private parking spaces located at the Delaware County Historical Society (DCHS) with the express permission from the Executive Director of DCHS.

20. When protestors arrived at City Hall on the morning of April 23rd, they were prevented from using the free parking lot located at City Hall by wooden horses, yellow police tape, and two private security officers guarding the entrance to the lot.

21. Parking authority vehicles and employees were parked at City Hall prior to protestors arriving on the morning of April 23rd.

22. Upon information and belief, Defendant Williams gave the security officers instructions to not allow protestors to park in the parking lot at City Hall.

23. Upon information and belief, Defendants Kirkland, West, and Williams, gave instructions to parking authority officers to ticket the vehicles of individuals who participated in the protest prior due solely to their participation in the protest.

24. The size and sound of the march attracted the attention of people along the route to ask questions about the cause. Those people were then given information to inform on the issue.

25. Plaintiff Jennings lives along the route of the march.

26. Plaintiff Jennings came outside to get information about the march and the issues surrounding it.

5

27. Plaintiff Jennings was speaking with people involved in the march when she, Plaintiff Ewall, and others were confronted by Defendants Kirkland, West, and Williams and others who had been driving behind the group of protestors in a black pick-up truck.

28. While seated in the drivers' seat of the truck, Defendant Kirkland used a loudspeaker to threaten Plaintiff Ewall and another protestor.

29. After threatening Plaintiff Ewall, Defendant Kirkland exited the truck and confronted Plaintiff Ewall.

30. Plaintiff Jennings stepped in between Plaintiff Ewall and Defendant Kirkland to deescalate the situation.

31. Defendant Kirkland berated Plaintiff Ewall even as Plaintiff Jennings stood in between the two men.

32. Plaintiff Ewall was holding his cell phone in his hands as if he was recording Defendant Kirkland berating him.

33. Defendant Kirkland slapped Plaintiff Ewall's hand to make him drop the phone and prevent him from recording the incident.

34. After having his hand hit by Defendant Kirkland, Plaintiff Ewall's phone flew from his hand and struck Plaintiff Jennings in the face, causing injury.

35. Immediately after the incident, Defendant Kirkland can be seen on video trying to approach Plaintiff Jennings as she holds her mouth trying to get away from him.

36. Plaintiff Jennings returned to her home to get away from Defendant Kirkland. While in her home she dialed 911.

37. While Plaintiff Jennings was on the phone with dispatch began to feel overwhelmed and opened her door for air.

38. When she opened her door, she found Defendant Kirkland standing at her front door.

39. Plaintiff Jennings closed the door and waited for the police to arrive.

40. Defendant Kirkland did not remain at the location to speak with the police.

41. On the following day, Plaintiff Jennings left her home to walk her dog and Defendant Kirkland slowly followed her in his vehicle as she walked down the street.

42. Chester officials have taken retaliatory action, including issuing citations, against individuals exercising their First Amendment rights.

43. On the date above, Chester issued parking citations to the owners of lawfully parked vehicles that were known to officials to belong to those participating in the protest without legal justification.

44. Chester officials routinely confront protestors and individuals exercising their right to free speech often clash with those making statements that are averse to the interests of Chester officials.

45. Chester does not perform any comprehensive review of incidents sufficient to detect patterns of misconduct by a particular official.

46. Chester officials do not use de-escalation techniques to avoid or minimize conflict. Instead, they respond with impatience, frustration, and sometimes directly escalate incidents themselves. Chester's weak oversight of officials' conduct facilitates this behavior.

7

47. Chester officials engage in a pattern or practice of violating First Amendment rights, including the right to record public officials' activities and the right to peaceably assemble.

## DEFENDANTS' VIOLATIONS OF PLAINTIFFS' CONSTITUTIONAL RIGHTS AND PLAINTIFFS' HARMS AND LOSSES

48. Plaintiffs were subjected to First Amendment violations by Defendants Kirkland, West, and Williams.

49. Plaintiffs were subjected to physical assault by Defendant Kirkland.

50. Defendants violated Plaintiffs' clearly established and well-settled federal constitutional rights, including, but not limited to, their right to peaceably assemble.

51. Furthermore, the Constitutional violations suffered by Plaintiffs were the result Chester and the other named defendants' policies, procedures, customs, and practices of allowing political officials to aggressively confront lawful protestors thereby violating the civil rights of those with whom they come into contact.

52. Defendants have maintained, with deliberate indifference to the impact on citizens, an inadequate system of review of instances of misconduct, abuse of powers or violation of citizens' rights by political officials, a system which has failed to identify instances of abuse of powers or violations of citizens' rights by political officials, discipline, or more closely supervise, and has led to the retention individuals who abuse their powers or violate citizens' rights, including the Defendants named herein.

8

53. Defendants were deliberately indifferent to the need for more or different training, rules, regulations, investigations, and discipline relating to political officials' interaction with lawful protestors as set forth above.

54. The foregoing acts, omissions, systemic deficiencies, practices, customs, and deliberate indifference constitutes the policies, practices, and customs of Defendants and have caused the political officials in the City of Chester, including the Defendants named herein, to violate the constitutional rights of citizens, including Plaintiffs.

55. The rights violations and injuries suffered by Plaintiffs were a foreseeable result of the policies, practices, customs, and deliberate indifference of Defendants.

<u>**COUNT I**</u>
**RETALIATION AGAINST FREE EXPRESSION**
**PLAINTIFFS V. ALL DEFENDANTS**

56. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

57. The Plaintiffs claim damages for the violation of their rights to freedom of speech, association, and assembly under the First Amendment of the United States Constitution, as well as the Pennsylvania Constitution.

58. The named Defendants, unlawfully and without legal justification, while acting under the color of state law, deprived all the above-named Plaintiffs of their rights to free speech, association, and assembly as protected by the First and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. Section 1983.

9

59. The named Defendants, by their actions noted above against the Plaintiffs for exercising their rights under the First Amendment, violated their individual rights to free expression, to association, and assembly.

60. The actions and conduct of the named Defendants, violated the rights of all the named Plaintiffs to continue to engage in their First Amendment rights and acted with deliberate indifference toward the Plaintiffs' individual First Amendment rights. The actions and conduct by the named Defendants had a chilling effect on their individual rights to free speech, association and assembly under the First Amendment.

61. As a direct and proximate cause of the named defendants' actions and conduct, the Plaintiffs suffered a deprivation of their First Amendment rights to continue to engage in free speech, association, and assembly on the aforementioned date and created a chilling effect on the exercise of their First Amendment rights in the future.

62. As a direct and proximate cause of the named Defendants, unlawful and unconstitutional actions, and conduct, the Plaintiffs suffered emotional distress, pain, and suffering. Some Plaintiffs suffered physical pain and suffering as well as financial loss, which will be established at trial.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

10

    i.    a declaration that Defendants, jointly and severally, have violated Plaintiffs' civil rights;

    ii.    compensatory damages in excess of $75,000;

    iii.    pre-judgment interest, attorneys' fees and costs;

    iv.    punitive damages against the individual defendants in their individual capacities; and,

    v.    such other legal and equitable relief as the Court deems just and proper.

## COUNT II
**DEPRIVATION OF RIGHTS GUARANTEED UNDER THE 1ST AND 14TH AMENDMENTS TO THE U. S. CONSTITUTION, ADDRESSABLE VIA 42 U. S. C. §1983; FAILURE TO TRAIN AND SUPERVISE
PLAINTIFFS V. ALL DEFENDANTS**

63. The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

64. The actions and inactions of Defendants, which caused Plaintiffs physical and emotional injuries, were the direct result of a failure to properly train and supervise the officials in Chester.

65. Defendants failed to properly train and supervise their subordinates when they failed to implement and enforce polices that trained political office holders how to properly interact with individuals without violating their civil and Constitutional rights.

66. At all times relevant hereto, Defendants were aware of the prevalence of Chester government officials engaging in conduct designed to dissuade citizens from participating in lawful protest in violation of their civil and Constitutional rights.

67. At all times relevant hereto, Defendants encouraged government officials to

11

aggressively interact with citizens involved in lawful protest in violation of their civil and Constitutional rights.

68. At all times relevant hereto, Defendants were aware of the prevalence of government officials aggressively interacting with citizens involved in lawful protest.

69. Upon information and belief, no Chester government officials have been disciplined by Defendants for the above referenced actions. This lack of discipline is a custom and practice at Chester.

70. Despite knowing of the prevalence of the violation of the civil rights of citizens and despite knowing of the importance of implementing and enforcing policies that train government officials on how to properly interact with and handle citizens exercising their right to peaceably assemble, Defendants failed to implement and/or enforce polices that trained staff how to identify and handle these issues.

71. The lack of training, supervision and discipline by Defendants is long-standing and amounts to a custom and practice that is so well settled and permanent at the City of Chester that it virtually constitutes law.

72. Indeed, this custom and practice was the moving force behind the Constitutional violations committed by Defendants Kirkland, West, and Williams against Plaintiffs.

73. Defendants encouraged, tolerated, ratified, and/or were deliberately and maliciously indifferent to the patterns, practices, and customs and/or to the need for the implementation of some, more or different training, supervision,

12

investigation and/or discipline and failed to train, supervise, investigate and/or discipline Defendants Kirkland, West, and Williams in the recognition of individual civil and Constitutional rights.

74. The acts and failures to act of Defendants were objectively unreasonable, and so deliberate and malicious that it would shock the conscience of a reasonable person.

75. Plaintiffs' injuries and damages were a direct and proximate result of Defendants encouragement, toleration, ratification, and/or deliberate indifference to the patterns, practices, and customs and/or to the need for the implementation of some, more or different training, supervision, investigation and/or discipline by failing to train, supervise, investigate and/or discipline Kirkland, West, and Williams in the recognition and treatment of those lawfully exercising their civil and Constitutional rights.

76. As a result, Defendants deprived Plaintiffs of the protections and procedural due process guaranteed them under the First and Fourteenth Amendments to the U.S. Constitution.

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

   i.   a declaration that Defendants, jointly and severally, have violated Plaintiffs' civil rights;

   ii.  compensatory damages in excess of $75,000;

13

iii.    pre-judgment interest, attorneys' fees and costs;

iv.    punitive damages against the individual defendants in their individual capacities; and,

v.    such other legal and equitable relief as the Court deems just and proper.

## <u>COUNT III</u>
## DEPRIVATION OF RIGHTS GUARANTEED UNDER THE 1ST AND 14TH AMENDMENTS TO THE U. S. CONSTITUTION, ADDRESSABLE VIA 42 U. S. C. §1983; SUPERVISOR LIABILITY
## PLAINTIFFS V. DEFENDANTS KIRKLAND, WEST, AND WILLIAMS

77.    The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

78.    Defendants Kirkland, West, and Williams were present for, had knowledge of, and participated in the Constitutional violations suffered by Plaintiffs on April 23, 2022, as described above.

79.    Defendants Kirkland, West, and Williams can be seen on video confronting and/or actively assisting in the deprivation of Plaintiffs' ability to lawfully exercise their First Amendment rights.

80.    Because of these actions, Plaintiffs suffered bodily injury.

81.    As a further consequence of Defendants' actions, Plaintiffs were placed in fear of serious bodily injury.

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i.    a declaration that Defendants violated Plaintiffs' civil rights;

14

ii.     compensatory damages in excess of $75,000;

iii.    prejudgment interest, attorneys' fees and costs;

iv.    punitive damages against the individual defendants in their individual capacities; and,

v.    such other legal and equitable relief as the Court deems just and proper.

### STATE LAW CLAIMS

### COUNT IV
### ASSAULT
### PLAINTIFFS VS. DEFENDANT KIRKLAND

82. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

83. Defendant Kirkland placed Plaintiffs in fear of imminent, unwarranted, unprivileged, offensive bodily contact.

84. As a consequence of these actions, Plaintiffs suffered bodily injury.

85. As a further consequence of Defendant's actions, Plaintiffs were placed in fear of serious bodily injury or death.

86. The acts of Defendant Kirkland as set forth above, constituted the tort of assault, all to Plaintiffs great detriment and loss.

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

vi.    a declaration that Defendant Kirkland has violated Plaintiffs' civil rights;

vii.   compensatory damages in excess of $75,000;

15

viii.   prejudgment interest, attorneys' fees and costs;

ix.   punitive damages against the individual defendants in their individual capacities; and,

x.   such other legal and equitable relief as the Court deems just and proper.

**COUNT V**
**BATTERY**
**PLAINTIFFS VS. DEFENDANT KIRKLAND**

87.  The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

88.  Defendant intended to subject Plaintiffs to harmful offensive bodily contact and did, in fact, subject them to such bodily contact.

89.  As a consequence of these actions, Plaintiffs suffered bodily injury.

90.  The acts of Defendant Kirkland as set forth above, constituted the tort of battery, all to Plaintiffs' great detriment and loss.

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i.   a declaration that Defendant Kirkland has violated Plaintiffs' civil rights;

ii.   compensatory damages in excess of $75,000;

iii.   prejudgment interest, attorneys' fees and costs;

iv.   punitive damages against the individual defendants in their individual capacities; and,

v.   such other legal and equitable relief as the Court deems just and proper.

16

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## PLAINTIFFS VS. DEFENDANT KIRKLAND

91. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

92. Defendant Kirkland intentionally, recklessly, willfully, and without legal justification, by extreme and outrageous conduct caused severe emotional distress to Plaintiffs.

93. Defendant Kirkland's affirmative act of slapping Plaintiff Ewall's hand and causing Ewall's phone to hit Plaintiff Jennings in the mouth was an intentional demonstration of power and threat of assault or serious bodily injury.

94. Defendant Kirkland harassed Plaintiff Jennings by stalking her in his vehicle in the days following the April 23rd protest.

95. Defendant Kirkland knew, or had reason to know, that Plaintiffs would fear bodily injury when unjustifiably confronted and threatened by him.

96. Defendant Kirkland knowingly and intentionally weaponized the power of his position to place Plaintiffs in fear of bodily injury.

WHEREFORE, Plaintiffs requests that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

    i.    a declaration that Defendant Kirkland has violated Plaintiffs' civil rights;

   ii.    compensatory damages in excess of $75,000;

  iii.    prejudgment interest, attorneys' fees and costs;

17

iv.     punitive damages against the individual defendants in their individual capacities; and,

v.      such other legal and equitable relief as the Court deems just and proper.

Plaintiffs hereby demand a jury trial.

/s/ Kevin V. Mincey
Kevin V. Mincey
ID No. 90201
kevin@minceyfitzross.com

/s/ Thomas O. Fitzpatrick
Thomas O. Fitzpatrick
ID No. 93204
tom@minceyfitzross.com

/s/ Riley H. Ross III
Riley H. Ross III
ID No. 204676
riley@minceyfitzross.com

**MINCEY FITZPATRICK ROSS, LLC**.
1650 Market Street, Suite 3600
Philadelphia, PA  19103
215-587-0006
*Counsel for Plaintiffs*

18